## THE WESTERN TUBE COMPANY

### *v.*

### JOSEPH POLOBINSKI.

*Opinion filed October 24, 1901.*

1. EVIDENCE—*what sufficient to go to jury on question of the master's knowledge of danger.*  Proof that the master knew hot "cinder-taps" had exploded by contact with water while on iron plates cooling off, is sufficient to justify the court in submitting to the jury, as a question of fact, whether by the exercise of ordinary care the master should not have known that hot "cinder-taps" were likely to explode by contact with snow and water on the dumping ground.

2. INSTRUCTIONS—*when instruction containing abstract rule of law may be given.*  An instruction correctly defining relation of fellow-servants as an abstract rule of law is properly given where the defendant has procured an instruction to be given to the effect, hypothetically, that under the facts proven the plaintiff and the man whose act caused the injury were fellow-servants.

*Western Tube Co.* v. *Polobinski*, 94 Ill. App. 640, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

C. K. LADD, and N. F. ANDERSON, for appellant.

JOHN V. STREED, SEWARD F. SHRIVER, and WILSON & MOORE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

While engaged as a laborer in the employ of the appellant company a "cinder-tap" exploded and threw molten slag over the face and body of the appellee, and into his eyes, so that he was rendered totally blind.  He was also severely burned in his face and on his body.  He instituted an action on the case in the circuit court of Henry county to recover damages from the appellant company, and upon a verdict of the jury was awarded judgment in the sum of $5000.  On appeal the judgment

was affirmed in the Appellate Court for the Second District, and a further appeal has brought the judgment before us.

The complaints are, the trial court erred in granting and refusing instructions. These objections require that brief mention of the facts be made.

In the rear end of the furnaces used by the appellant company for the purpose of melting iron there is collected a "dross," consisting of molten sand, rust and other refuse of the iron. The furnaces are so constructed that this molten mass may be drawn out of the furnace by a process called "tapping it off." It is allowed to escape from the furnaces through holes called "tap holes," and flows thence into iron receptacles, which, together with wheels on which the receptacles rest, are called "buggies." The buggies are backed under the tap holes until filled with the molten slag or dross, and are then wheeled on iron plates to a space between the furnace house and the pump house, where the molten matter is allowed to cool. The mass contained in the buggy is called a "cinder-tap." When partially cool it is dumped out of the buggies onto the iron plates. When cold the taps are wheeled out on the company's ground to a point near the tracks of a railroad, and are there broken up and loaded on cars for shipment. On the morning of February 19, 1898, the appellee, together with other employees of the appellant company, was engaged in breaking up the cold cinder-taps which had been wheeled out and placed near the railroad track, and throwing the broken pieces of the taps into the cars standing on the track, to be shipped. A slight fall of snow was on the ground and some snow and rain was falling while the men were at work. The ground was wet and water and slush stood in little pools. One Felix Demon was engaged in wheeling cinder-taps from the iron plates near the furnace room out to the shipping ground. He brought out a hot cinder-tap and dumped it near the workmen, and within

three or four minutes it exploded. The appellee stood in the immediate vicinity of the tap, and the hot and molten contents thereof were thrown upon his face and body, as before mentioned.

The declaration alleged the appellant company "well knew that said blocks of slag or cinders, called 'cinder-taps,' were liable to explode when brought into contact with damp or wet ground and do injury to persons who might be near when such explosion might take place, or could have known the same by the exercise of reasonable diligence in that behalf; that the plaintiff had no knowledge of the fact that said blocks of cinder or slag were liable to explode and do injury, and he was never informed or notified by the defendant, or any one else, of such danger."

It is complained the instructions numbered 2, 3, 4 and 5 given on behalf of the appellee authorized the jury to return a verdict for the appellee if they believed, from the evidence, that the appellant company knew, or by the exercise of ordinary care could have known, that cinder-taps were liable to explode and do injury to those working near them if such cinder-taps were dumped upon damp or wet ground or brought in contact with water while in a heated condition.

The first ground of objection is, that the allegation of the declaration that the appellant company, by the exercise of ordinary care, ought to have known the cinder-taps were liable to explode, etc., (to quote from the brief of counsel,) "states no issuable facts,—that it is but a bare allegation there was a duty resting on the appellant, and that a duty sprung from facts," and the pleader must state the facts, hence the insistence is, the court, in the instructions, went outside of the issuable facts. Without conceding the correctness of the contention in any respect, it may be disposed of by saying that it was not the office of the allegation in question to charge that any duty rested on the defendant. The duty of the appellant

company to advise the appellee of the danger and injury that might result from the explosion of ·cinder-taps, if known to appellant, was fully and sufficiently charged otherwise in the declaration, and the purpose of the allegation in question was to charge the appellant company with knowledge out of which such duty grew.

Another ground of objection is, there was no evidence on which to base the claim that the appellant company knew, or by the exercise of ordinary care could or should have known, that cinder-taps in a heated condition would or were likely to explode if they became damp or wet, and hence no evidence on which to ground the instructions. A number of witnesses, employees and ex-employees of the appellant company, testified to their knowledge, acquired while in the employ of the appellant company, that moisture or water would cause hot cinder-taps to explode. One of the witnesses, Joseph Welch, an ex-employee of the appellant, testified that a man by the name of Walton was injured in the mills of the appellant by the explosion of a cinder-tap; that he (the witness) was present and saw Walton carried from the mills of the appellant after he was injured by such an explosion. The cinder-tap which injured said Walton exploded while on the iron plates near the furnace room, but all the witnesses referred to testified that it was their experience, gained in the course of their employment in the mills of the appellant company, that hot cinder-taps were likely to explode if allowed to come in contact with water. There was no direct proof that any person who occupied the position of vice-principal, or who stood charged, by reason of his relation to the appellant company, with the duty of taking action to avoid the danger arising from the explosion of cinder-taps, had actual knowledge that such taps had exploded after having been wheeled away from the plates and dumped on the shipping ground. Rollin Baker, superintendent of the appellant's mills, testified he knew that a cinder-tap had exploded while

on the iron plates near the furnace; but the insistence is, proof that cinder-taps had exploded while on the iron plates awaiting the process of cooling did not charge the appellant company with knowledge that such taps might or possibly would explode after having been deposited on the dumping ground near the railroad tracks. True, the conditions were not the same; but this fact does not seem to us to strengthen the position of counsel, but rather to weaken it, for the reason the wet condition of the ground at the dumping ground near the railroad tracks was more conducive to an explosion than the condition on the iron plates. The appellant company having knowledge that the cinder-taps had exploded while on the plates, it would not be creditable to the intelligence of those in charge of its affairs to conclude they would have deemed explosions less likely to occur if the cinder-taps should be removed from the iron plates while yet hot and placed on the wet dumping ground, in a pool of water. The experience of the appellant company, as master, was sufficient to justify the court in submitting it to the jury, as a question of fact, whether, in the exercise of ordinary care and caution, the appellant company should have known that cinder-taps in a heated condition were liable to explode while on the dumping ground as well as while on the plates.

It is objected that instruction No. 1 given for the appellee contains a mere abstract proposition of law, and therefore ought not to have been given. This instruction defines the relation of fellow-servants abstractly, it is true, but, nevertheless, correctly. The appellant company was insisting that facts and circumstances in proof raised the defense that said Demon, who wheeled the cinder-taps to the place of the explosion, and appellee, were fellow-servants, and that therefore the doctrine of *respondeat superior* did not apply. It prepared, and the court gave, an instruction, hypothetically, to that effect, —instruction No. 29. The tendency of the instruction

complained of was to enlighten the jury as to a legal principle relevant to the case, proper for the jury to consider with reference to the evidence as to a fact on which the jury were required to respond.

A special objection is also preferred to the fourth instruction given for the appellee, that it submitted to the jury an issue not within the scope of the declaration, viz., that the appellant company was negligent in causing the hot cinder-tap to be taken from its place on the plates to the dumping ground. We find in the first count of the declaration originally filed, and also in the additional count filed by leave of the court, allegations charging the appellant company negligently and carelessly permitted and caused the hot cinders to be dumped in the yard where the appellee was working.

The only complaints with reference to the rulings of the court in granting or refusing instructions asked to be given on behalf of the appellant company are, that the court refused to give instructions Nos. 32 and 34 asked in that behalf. These two instructions were based on appellant's contention, hereinbefore considered and disposed of, that there was no evidence produced to justify the submission to the jury of the question whether the appellant company, at the time of the explosion in question, knew, or in the exercise of ordinary prudence should have known, that hot cinder-taps were liable to explode if placed on the dumping ground under the prevailing conditions.

We find no error in the record, and the judgment is affirmed.                          *Judgment affirmed.*

Mr. JUSTICE HAND, having been of counsel in the court below, took no part in the decision of the case in this court.