FLORENCE WOOLLEY ABRAHAMS *et al.* Plaintiffs in Error,
  *vs.* MARY E. WOOLLEY *et al.* Defendants in Error.

*Opinion filed December 22, 1909—Rehearing denied Feb. 2, 1910.*

1. WITNESSES—*wife cannot testify to admissions or conversations of husband.* The fact that the widow is called by the contestants to testify against her own interest, which lies with the sustaining of the will, does not remove the disqualification existing at common law, and recognized by section 5 of the Evidence act, against a wife testifying to matters which she learned from admissions or conversations of her husband, made to her or to third persons in her hearing.

2. EVIDENCE—*when refusal to permit oral proof of value of estate in a will contest is proper.* Where the contestants in a will case introduce in evidence the executor's inventory it is proper for the court to refuse to permit them to introduce oral testimony as to the value of the estate, where they do not offer such proof to impeach the inventory but merely to show the value of the estate, without stating to the court whether they expect to prove such value to be less or greater than is shown by the inventory.

3. WILLS—*inequality of distribution does not, of itself, show unsoundness of mind or undue influence.* Inequality in the distribution of the testator's property among his children is not, of itself alone, a circumstance tending to show either unsoundness of mind or undue influence.

WRIT OF ERROR to the Circuit Court of Bureau county;
the Hon. RICHARD M. SKINNER, Judge, presiding.

Plaintiffs in error filed their bill in the circuit court of Bureau county to set aside the last will and testament of their father, William Woolley, deceased, alleging mental incapacity on the part of the testator to execute the will, and that at the time of its purported execution he was under and was induced by undue influence exercised over him by his son, Ernest A. Woolley, to make the will, and that Ernest A. Woolley resorted to undue arts, fraudulent practices and misrepresentation in procuring the execution of the will. Ernest A. Woolley, in his individual capacity and as executor of the will, was made a defendant. Lucinda

Woolley, the widow of the deceased, Gertrude Woolley, a daughter, Mayme Woolley, wife of E. A. Woolley, and R. L. Russell, as attorney in fact of Lucinda Woolley, were also made defendants to the bill. Ernest A. Woolley, individually and as executor, and Mayme, Woolley, his wife, filed their joint and separate answer, denying the allegations of the bill above mentioned. Plaintiffs in error filed their replication to this answer. The other defendants were defaulted. An issue of fact was made and tried before a jury, and a verdict returned finding the writing read in evidence was the last will and testament of William Woolley, deceased. A motion for a new trial was overruled and a decree entered in accordance with the verdict. The cause is brought to this court on writ of error to review the decree of the circuit court.

After the entry of the decree in the court below Ernest A. Woolley died, and his widow, Mary E. Woolley, (which is the correct name of Mayme Woolley,) was appointed administratrix *de bonis non* with the will annexed of the estate of William Woolley, deceased, and executrix of the last will and testament of her deceased husband, Ernest A. Woolley. The death of Ernest A. Woolley was suggested in this court, and Mary E. Woolley, in the official capacities named, was substituted as a party defendant to this cause.

The will was executed and attested on October 7, 1901. The testator died October 6, 1906, and the will was admitted to probate in the county court of Bureau county on December 8, 1906. By the provisions of the will the testator devised and bequeathed to his wife, Lucinda Woolley, in lieu of her dower and other interest in his estate, all the rents, issues and profits of his entire estate during her natural life. To each of his three daughters he gave the sum of $1000, and to his son, Ernest A. Woolley, he devised and bequeathed all the residue and remainder of his estate, of whatsoever kind or nature. He directed that

the son, Ernest A. Woolley, pay the legacies to the daughters within five years after the death of Lucinda Woolley. From the inventory of his estate introduced in evidence on the trial it appears that the testator died seized of real estate inventoried at the value of $24,200 and personal property worth $808.25. .

H. STERLING POMEROY, and NICHOLAS J. DEMERATH, for plaintiffs in error.

WATTS A. JOHNSON, and MANN & MILLER, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

While numerous errors are assigned on the record, but two are argued in briefs of counsel for plaintiffs in error: First, that the court erred in sustaining objections of defendants in error to the competency of Lucinda Woolley, widow of the testator, called as a witness to testify on behalf of contestants, plaintiffs in error here; and second, that the court erred in sustaining objections to the testimony offered for the purpose of proving the value of the estate left by the testator.

There is no evidence in the record tending to show that the testator was of unsound mind and memory. On the contrary, all the proof shows that he was of sound mind and memory and possessed of testamentary capacity. No proof to the contrary was offered by plaintiffs in error. Indeed, one of the things they sought to prove by the widow was that the testator was of sound mind and memory. Neither is there any evidence in the record tending to show undue influence on the part of Ernest A. Woolley, or that he resorted to any undue arts, fraudulent practices or misrepresentations in procuring the execution of the will.

Plaintiffs in error contend that as the interest of Lucinda Woolley was in favor of sustaining the will, she was a competent witness when called to testify by those attacking the will for the purpose of setting it aside. It is conceded she was not competent to testify as to any admissions or conversations of the testator, her husband, to her or to any third person in her presence. When objection was made to her testimony plaintiffs in error made an offer of what they expected to prove by her. Said offer covers three printed pages of the abstract and this opinion will not be encumbered by setting it out. We have examined and analyzed it, and are of the opinion that Lucinda Woolley was an incompetent witness as to practically all of it that was relevant and material. The important portions of the offer had reference to the relations between the testator and his son and their transactions with and conduct toward each other, and could not have been known by the witness except from conversations occurring between father and son in the presence and hearing of the witness. The fact that she was called by the adverse party to testify against her own interest does not remove the disqualification existing at the common law and recognized by section 5 of the chapter of our statute on evidence and depositions against a wife testifying to admissions or conversations of the husband made by him to her or to third persons. (*Donnan* v. *Donnan,* 236 Ill. 341, and cases there cited; *Reeves* v. *Herr,* 59 id. 81.) The matters proposed to be proved by Lucinda Woolley as to which she may have been competent to testify and which were not proven by any other testimony were so immaterial as to render harmless the ruling of the court in refusing to permit her to testify. Where this is true a reversal would not be justified.

Plaintiffs in error introduced in evidence the inventory filed by the executor of the will of William Woolley. It showed the value of the real estate to be $24,200 and the personal property $808.25. They then offered to prove by

oral testimony the extent and value of the estate left by
the testator. On objection being made the court inquired
if it was sought to impeach the inventory in any way.
Counsel replied that was not their purpose; that they of-
fered the proof for the purpose of showing that some mis-
take may have been made in the inventory and for the
purpose of showing the value of the estate upon the ques-
tion of the inequality in the disposition of it by the will.
It was not stated that it was proposed to show that the
value was either less or greater than that shown by the in-
ventory. If it was intended to prove by the witnesses that
the value was less, then plaintiffs in error were not injured
by the ruling. If it was expected that the witnesses would
testify that it was of greater value than shown by the in-
ventory and the proof was offered for that purpose, the
court should have been so advised. Under such circum-
stances there was no error in sustaining the objection to the
offered testimony. *Ittner Brick Co.* v. *Ashby,* 198 Ill. 562.

We find no error of any substantial character in the
rulings of the court complained of. The plaintiffs had the
benefit of whatever it may have been worth, of showing
great inequality in the distribution of the estate of the
testator. This, standing alone, we have repeatedly held is
not a circumstance tending to show either unsoundness of
mind or undue influence. The circumstances under which
the will was executed, as testified to by the three witnesses
to it, do not tend to show that any undue influence was
operating upon the testator at the time, but, on the con-
trary, all that is shown by said testimony indicates that he
was acting of his own free will and without any restraint.
That he intended to dispose of his property in the manner
he did, so far as the daughters were concerned, is shown
by the fact that in 1896 he made a will exactly like the
one now under consideration, except that at that time he
had two sons living and they were made residuary devisees
in equal shares. By that will the widow and the daugh-

ters were given the same interest in the estate that they were by the last will. One of the sons having died, the will in controversy was made and the surviving son was made the sole residuary devisee. Furthermore, two disinterested witnesses testified that in 1903 and 1904 the testator told them he had made his will and given his daughters $1000 each, and that after he and his wife died the bulk of his property would go to his son, Ernest.

We do not see how any other result could have been reached than a decree sustaining the will, and the decree of the circuit court is affirmed.

*Decree affirmed.*